UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-cv-00080-LLK

JOSHUA J. JOHNSON      PLAINTIFF

v.

ANDREW SAUL, Acting Commissioner of Social Security      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Docket Number ("DN") 16 and DN 21. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 12].

Plaintiff persuasively argues that the Administrative Law Judge's ("ALJ's") decision failed to give "good reasons" for giving "little weight" to the opinion of his treating physician regarding his limited abilities to sit, stand, walk, lift, carry, and inability to use his hands for repetitive action due to joint pain. Accordingly, this Order will REMAND this matter to the Commissioner for a new decision.

**The ALJ's decision**

The ALJ's decision concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 20, 2016 [when Plaintiff alleges he became disabled], through the [January 16, 2019] date of this decision." [DN 11-2 at 25-26]. In support, the ALJ found that, notwithstanding Plaintiff's severe, or vocationally significant, "cutaneous lupus erythematosus, degenerative disc disease of the lumbar, cervical and thoracic spine, status post right carpal tunnel release, [and] history of glaucoma," Plaintiff can perform a limited range of light work. *Id.* at 19, 20-21. Although Plaintiff is unable to perform any past relevant work, "there are jobs that exist in significant numbers in the national economy" that he can perform. *Id.* at 24-25.

On October 15, 2018, at Plaintiff's request, Plaintiff's treating physician, Jared Wilson, M.D., completed the Medical Source Statement. [DN 11-7 at 644-48]. Among other things, Dr. Wilson found that Plaintiff can sit for a total of 2 hours in an 8-hour workday, can stand for a total of 2 hours in an 8-hour workday, and can walk for a total of 2 hours in an 8-hour workday; can never lift/carry over 10 pounds; and cannot use his hands for repetitive action such as simple grasping, push and pulling of arm controls, and fine manipulation due to "joint pain from lupus." *Id.* at 647.

The ALJ gave "little weight" to Dr. Wilson's opinion "because it is inconsistent with the record which reveals that the claimant's lupus and carpal tunnel symptoms have improved with treatment and he has not undergone rigorous treatment for his musculoskeletal issues." [DN 11-2 at 23]. The ALJ found that Plaintiff:

> … has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and carrying 20 pounds occasionally and ten pounds frequently; standing and/or walking four hours out of an eight hour workday; sitting six hours out of an eight hour workday; can push and pull as much he can lift and carry; occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch, and crawl; he is able to frequently handle, finger, and feel bilaterally; he is able to avoid ordinary work place hazards, but can perform no work at unprotected heights or around moving, mechanical parts. He is able to frequently handle small objects, but is unable to manipulate extremely small objects such as threading a needle. He should also avoid concentrated exposure to vibrations, temperature extremes. He should avoid occupations requiring direct exposure to sunlight.

[DN 11-2 at 20-21].

### Plaintiff's first argument is persuasive.

Plaintiff's first argument is that "[i]t was error for the ALJ to give little weight to the opinion of Mr. Johnson's treating physician, Dr. Jared Wilson" and to find that Plaintiff can "engage in substantial gainful activity at the light level." [DN 16 at 3-4]. "The ALJ must give good reasons for discounting a treating physician's opinion." *Id.* at 5. The argument is persuasive.

Plaintiff filed his applications for benefits in June 2016. [DN 11-2 at 16]. "For claims [such as the present one] filed before March 27, 2017, the [old] rules [for weighing medical opinions] in § 404.1527 apply." 20 C.F.R. § 404.1520c.

Under the old rules, a treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). When the ALJ does not give the treating source's medical opinion controlling weight, the ALJ must apply the following factors in determining the weight to give the medical opinion: Length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; other factors. *Id.* The ALJ's decision must "always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." *Id.*

In this case, neither the ALJ's decision nor the Commissioner's fact and law summary reflect recognition of applicability of the old rules. Particularly, there is no recognition that a treating physician's opinion is generally entitled to more evidentiary weight than the opinion of a non-examining source; under certain circumstances, a treating physician's opinion is entitled to controlling weight; and the ALJ's decision must always give good reasons for the weight given to a treating physician's opinion.

As indicated above, the ALJ discounted Dr. Wilson's opinion regarding Plaintiff's limited abilities to sit, stand, walk, lift, and carry because Plaintiff has not "undergone rigorous treatment for his musculoskeletal issues." [DN 11-2 at 23]. In January 2017, a lumbar MRI showed a "large left lateral disc protrusion at L3-L4 that is considerably narrowing the left neural foramen and I believe displacing the exiting nerve root," and, in March 2017, an electromyography / nerve conduction study ("EMG/NCS") showed "abnormalities … most consistent with an early Peripheral Neuropathy." [DN 11-7 at 558, 564]. Additionally, there is MRI evidence of significant cervical and thoracic impairment, including:

> … Changes of spondylosis localized to primarily C6-C6 and C6-C7 with disc space narrowing at both levels and with a moderate disc protrusion that is associated with some uncovertebral hypertrophy and narrowing of both neural foramina with a relative central canal stenosis with the AP diameter of the dural sac measuring less than 10 mm at both C5-C6 and C6-C7.
> … Small central disc bulge at T4-TS.
> … Small central annular rent at TS-T6.
> … Small right paramedian disc bulge at T9-T10 and a small central disc bulge at T11-T12.

[DN 11-7 at 412, 562]. There is no evidence any rigorous treatment for these conditions exists. Therefore, the ALJ's decision did not give a "good reason" for discounting this aspect of Dr. Wilson's opinion.

As indicated above, the ALJ discounted Dr. Wilson's opinion regarding Plaintiff's inability to use his hands for repetitive action due to joint pain because Plaintiff's "lupus and carpal tunnel symptoms have improved with treatment." [DN 11-2 at 23]. There is no evidence of improvement to the extent of allowing Plaintiff to "frequently handle, finger, and feel bilaterally" and "frequently handle small objects" (as the ALJ found at DN 11-2 at 21). Therefore, the ALJ's decision did not give a "good reason" for discounting this aspect of Dr. Wilson's opinion.

The "good reasons" rule "permit[s] meaningful review of the ALJ's decision and ... ensure[s] that a claimant is not bewildered when an administrative bureaucracy tells him that he is not disabled." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017). Where (as in the present case) the ALJ's decision includes no "good reasons" for discounting the treating source's medical opinion, this "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007).

### Plaintiff's second argument is unpersuasive.

Plaintiff's second argument is that the ALJ "erred in failing to consider the combined effects of [Plaintiff's] impairments." [DN 16 at 5]. The argument is unpersuasive.

The ALJ was required to "consider the combined effect of all [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). An ALJ's individual discussion of multiple impairments does not, however, imply that

4

the ALJ failed to consider the effect of the impairments in combination. *Burton v. Comm'r*, 702 F. App'x 436, 437 (6th Cir. 2017). It is sufficient that "the ALJ's decision explicitly considered which jobs [Plaintiff] could be expected to perform in light of [his] … severe 'impairments' [plural]." *Id.*

**Plaintiff's third argument is unpersuasive.**

Plaintiff's third and final argument is that the ALJ's finding that his impairments do not satisfy the clinical criteria of Listing 1.04 is not supported by substantial evidence. [DN 16 at 5]. The argument is unpersuasive.

Listing § 1.04 provides that the following disorders of the spine are per-se disabling:

1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.04, Appendix 1, 20 C.F.R.

The ALJ found that Plaintiff's severe impairments do not satisfy the clinical criteria of Listing 1.04:

The record does not contain evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test (sitting and supine). Nor is there evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication and inability to ambulate effectively. Exhibit 2F; Exhibit 4F; Exhibit 5F; Exhibit 10F; Exhibit 14F. As such, the claimant does not meet listing 1.04.

[DN 11-2 at 19].

5

In his fact and law summary, Plaintiff does not mention anything about his "neuro-anatomic distribution of pain"; "motor," "sensory," or "reflex" loss; "spinal arachnoiditis"; or "lumbar spinal stenosis" – much less identify any evidence contradicting the ALJ's finding that those clinical criteria are **not** satisfied.  In other words, Plaintiff does not satisfy his burden of proving he satisfies the Listing.

Plaintiff cites *Reynolds v. Commissioner* for the proposition that, in determining whether he satisfied Listing 1.04, the ALJ was required to "actually evaluate the evidence," compare it to the requirements of the Listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review."  *Reynolds, v. Comm'r*, 424 F. App'x 411, 416 (6th Cir. 2011).  The ALJ's decision (unlike Plaintiff's argument) cited specific evidence relevant to the Listing criteria.

**Order**

Therefore, this matter is hereby REMANDED to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

April 22, 2021

**Lanny King, Magistrate Judge**
**United States District Court**